**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MIKAIL MARTINEZ,

      Plaintiff,

          v.

ENGLISH, MORGAN, BURNS,
SHROWEL, JOHNSON, HEISMAN,
VASQUEZ, ANGLE, INDIANA DEPT OF
CORRECTIONS,

      Defendants.

CAUSE NO. 3:25-CV-885-TLS-AZ

### OPINION AND ORDER

Mikail Martinez, a prisoner without a lawyer, filed an amended complaint. ECF 7. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On April 1, 2025, Martinez was "trapped" in his cell at the Miami Correctional Facility (MCF) by "well known gang members" and stabbed by two of those inmates. EC 7 at 4. Martinez then "gained control" of one of the knives and went to the day room where he was "attacked by several inmates with knives and assaulted." *Id*. He was seriously injured during the incident. *Id.* He states, "Officers working in K-unit failed to take preventative measures to protect the plaintiff and conduct an adequate investigation after [the incident] to assure these offenders were held accountable for their actions." *Id*. He has sued Warden English, Sgt.

Morgan, Officer Burns, Officer Shrowel, Officer Johnson, Mr. Heisman, Officer Vasquez, Mr. Angle, and the Indiana Department of Correction for compensatory and punitive damages.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (ellipsis omitted). That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (cleaned up). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) (citation omitted). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citation omitted). "Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (citation omitted).

Martinez claims the defendants "failed to take preventative measures" to protect him from the attack by gang members on April 1, 2025. However, he does not allege he advised any of the officers or officials of a specific, credible, and imminent risk to his safety *prior* to the incident. He does assert that the officers did not conduct routine searches of the assailants or their cells, but he does not explain why blanket searches were necessary or suggest the officers were aware of a specific need to search them. *See Gevas*, 798 F.3d at 481 (prospective assailant must normally be identified and threat must be specific); *Klebanowski*, 540 F.3d at 639–40 (even knowledge of prior attacks is not sufficient). Similarly, Martinez alleges the officers "allowed" the gang members to enter his cell, but he does not say how. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Hawkins-El v. Hyatte*, No. 21-3152, 2022 WL 10327307, at *2

3

(7th Cir. Oct. 18, 2022) (plaintiff did not plausibly allege guard who "allowed" people into unit had "knowledge that any of the entering prisoners were going to attack anyone" so failure to protect claims were properly dismissed). These allegations fail to state any claims.

Directly preceding and during the attack, Martinez asserts the officers did not "conduct proper surveillance," were not in the correct locations,[1] and/or were "delayed" in their response, but without additional supporting details, these allegations amount to negligence rather than actionable deliberate indifference. *See Schillinger*, 954 F.3d at 994*; see also Lewis*, 107 F.3d at 554 (exercising poor judgment isn't sufficient for a failure to protect claim); *Hawkins-El*, 2022 WL 10327307, at *2 (neither warden who knew of staff shortage nor shift supervisor/staff officer who left the unit unattended could plausibly have known the plaintiff's safety was in jeopardy from his attackers). Martinez also alleges Officer Vasquez "stayed in the sally port" during the attack. Once an offender is under attack, an officer cannot just stand by and do nothing. *See Schillinger v. Kiley*, 954 F.3d 990, 994–95 (7th Cir. 2020); *see also Borello v. Allison*, 446 F.3d 742, 748–49 (7th Cir. 2006) (noting Eighth Amendment violation can occur where prison official "did not respond to actual violence between inmates"). On the other hand, "correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety . . . ." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011). Martinez claims Officer Vasquez stayed in the sally port and did not act quickly enough, but he does not allege she failed to act altogether. Importantly, he does not describe the timing of the incident in any way or explain what steps were taken, when, or by whom to respond to the emergency situation once it was discovered. Without more, these allegations also fail to state a claim. *See Schillinger*, 954 F.3d at 994 (complaint must contain sufficient, non-

---

[1] He says there was no officer standing at the "officer's podium" conducting surveillance.

4

speculative factual detail); *see also Shields*, 664 F.3d at 181 (no constitutional violation where guard didn't open the day room door during a dangerous physical altercation but did call for back-up and monitor the scene from a "secure area" until other officers arrived).

After the incident, Martinez claims all the defendants "failed to do an adequate investigation" or ensure the attackers were "held accountable" for their actions. However, he does not have a constitutional right to bring charges against another individual or even to force officials to investigate an alleged crime. *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . , a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction"). Martinez claims the lack of investigation led to him being placed back into the general population where he was subsequently "threatened" by gang members.[2] Specifically, he says Unit Team Manager Mr. Angle refused three requests for protective custody he made while he was in the infirmary after the attack, and he was moved to general population about three weeks later on April 24, 2025. He does not, however, explain the content of his requests, describe the threats he received, identify the individuals who made them, or suggest he has been harmed since the original incident. These allegations fail to state a failure to protect claim as well. *See Gevas*, 798 F.3d at 481 (prospective assailant must normally be identified and threat must be specific); *Klebanowski*, 540 F.3d at 639–40 (even knowledge of prior attacks is not sufficient). Moreover, Martinez

---

[2] He does not say if they were the same individuals who attacked him or different ones.

admits he is "currently being held in segregation awaiting transfer without a conduct," so the amended complaint does not plausibly suggest he is currently in danger.[3]

With regard to Warden English, Martinez claims he was deliberately indifferent and failed to protect him from the attack because of the "policies, practices and customs set up by Warden English and his administration" that "allow[] his officers not to conduct proper surveillance" or "proper investigations." Specifically, he says Warden English doesn't ensure officers are "standing at the dorm podiums" or that they are conducting cell searches. However, "[a] defendant cannot be held liable for a constitutional violation if [he] did not cause or participate in the alleged violation." *Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) (citation omitted); *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and defendants cannot be held liable for the misdeeds of other staff); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (same). It is also important to note that "the division of labor is critical to the efficient functioning of the [prison] organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017); *see also J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (officials are not liable simply because they oversee the prison's operations or hold supervisory positions). Accordingly, there is an insufficient basis in the amended complaint for the court to plausibly infer Warden English violated Martinez's constitutional rights.

To the extent Martinez is claiming Warden English and the Indiana Department of Correction are liable under a *Monell* theory, he has not provided sufficient details to support that assertion. He says the policies, practices, and/or customs—such as not ensuring the officers

---

[3] While he takes issue with this placement because he is not receiving the "privileges that he is qualified for" including purchasing food and property items off commissary, this does not state a constitutional violation. *See, e.g.*, *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017).

6

conduct cell searches, investigate properly, or are at their proper posts—create a "dangerous environment" for offenders. But, the only non-speculative factual details he provides in support of his claims relate to the single instance when he was attacked and its aftermath. This is not sufficient. *See Schillinger*, 954 F.3d at 994; *see also Sanders v. Moss*, 153 F.4th 557, 570 (7th Cir. 2025) ("one incident cannot plausibly be described as so persistent and widespread as to practically have the force of law") (internal quotation marks and citation omitted)). Regarding the alleged failure to train—even putting aside the sparsity of the allegations—"in the Eighth Amendment context, such [failure to train] claims may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001)). Neither Warden English nor the Indiana Department of Correction are municipalities, so Martinez cannot bring failure to train claims against them.

Accordingly, the amended complaint does not state any claims for which relief can be granted. If Martinez believes he can state a claim based on (and consistent with) the events described in this amended complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

As a final matter, the court must address the motion for preliminary injunction and related motion to rule that Martinez filed. ECF 12 & ECF 13. A preliminary injunction is a "very

7

far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612–13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (cleaned up). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind*., 43 F.4th at 791.

effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 613 (cleaned up).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (cleaned up). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (cleaned up).

In his motion, Martinez asks the court to issue an emergency order to transfer him to another facility, reinstate his contact visits that were allegedly taken from him, and to "stop the facility from advancing with further conduct reports." ECF 12 at 1. He says Warden English and Supervisor Mr. Hiesman violated the Eighth Amendment by charging him with a conduct report in December 2025 that resulted in his contact visits being taken away permanently after he was found guilty of battery against an offender. He believes this was done in retaliation for filing this lawsuit. However, as described in detail above, Martinez's amended complaint fails to state any claims so he currently has no chance of success on the merits of these new allegations.

For these reasons, the court:

(1) DENIES the motion for preliminary injunction (ECF 12) and related motion to rule (ECF 13);

(2)  GRANTS Mikail Martinez until **August 28, 2026**, to file an amended complaint; and

9

(3) CAUTIONS Mikail Martinez if he does not do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 24, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT